**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

Averon US, Inc.,

     Plaintiff,

         v.

AT&T Inc. & ZenKey LLC,

     Defendants.

Civil Action No. _____

**JURY TRIAL DEMANDED**

REDACTED

## COMPLAINT FOR TRADE SECRET MISAPPROPRIATION, FRAUD, BREACH OF CONTRACT, UNFAIR COMPETITION, AND INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Averon US, Inc. ("Averon" or "Plaintiff"), files this Complaint for Misappropriation of Trade Secrets Under Federal and California Law, Fraud, Breach of Contract, Unfair Competition, and Intentional Interference with Prospective Economic Relations and associated Damages against Defendants AT&T Inc. ("AT&T") and ZenKey LLC ("ZenKey") (each a "Defendant", or collectively, "Defendants"), and would respectfully show the Court as follows:

This Complaint involves a Fortune 15 corporation that misappropriated proprietary software technology from a start-up company under the guise of collaboration, and then used its size advantage and monopoly power to drive the start-up out of business by poaching its existing and potential customers and locking it out of the marketplace.

### PARTIES

1.     Plaintiff Averon US, Inc. is a Delaware corporation with its principal place of business at 470 Noor Ave #1039, South San Francisco, CA 94080.

2.      Defendant AT&T Inc. is a Delaware corporation with its principal place of business at 208 South Akard Street, Dallas, Texas 75202.

3.      Defendant ZenKey LLC is a Delaware limited liability company with its principal place of business at 1 Verizon Pl, Alpharetta, Georgia 30004.

## **JURISDICTION**

4.      This action arises under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq.*; California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq.*; California's Unfair Competition Law ("CUCL"), the California Business & Professional Code § 17200 *et seq.*; and New York common law. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the federal trade secret (DTSA) claim. This Court also has supplemental jurisdiction over the state trade secret (CUTSA) claim, the fraud claim, the intentional interference with prospective economic relation claim, the unfair competition claims, and the breach of contract claims under 28 U.S.C. § 1367(a).

5.      This Court has personal jurisdiction over Defendants because each Defendant is incorporated in Delaware.

6.      This Court also has personal jurisdiction because Defendants have minimum contacts with this forum as a result of business regularly conducted within the State of Delaware and within this judicial district, and, specifically as a result of, at least, committing the tort of trade secret misappropriation within Delaware and this judicial district. Personal jurisdiction also exists because Defendants AT&T, and/or ZenKey via its joint venture relationship with AT&T, *inter alia*:

   A.  engage in substantial and not isolated interstate activity in Delaware;

   B.  have substantial, continuous, and systematic business operations in this judicial district;

C.  own, manage, and operate facilities within this judicial district, including individual AT&T-owned or franchised stores at the following locations:

    i.  1839 Pulaski Hwy, Bear, DE 19701,

    ii.  38069 Town Center, Suite 1, Millville, DE, 19967,

    iii.  4737 Concord Pike, Ste 120, Wilmington, DE 19803,

    iv.  614 N. Dupont Hwy, Milford, DE 19963,

    v.  26670 Centerview Dr, Unit 14, Millsboro, DE 19966,

    vi.  172 East Main St, Newark, DE 19711,

    vii.  22800 Sussex Hwy, Seaford, DE 19973,

    viii.  4598 S. Dupont Hwy, Suite 4, Dover, DE 19901,

    ix.  2090 Naamans RD, Wilmington, DE 19810,

    x.  661 Middletown Warwick Rd, Middletown, DE 19709,

    xi.  3146 Fashion Center Blvd, Newark, DE 19702,

    xii.  115 S Dupont Hwy, New Castle, DE 19720,

    xiii.  735 Christiana Mall, Space 1740, Newark, DE 19702,

    xiv.  19354 Miller Rd, Suite A, Rehoboth Beach, DE 19971,

    xv.  275 N Dupont Hwy, Dover, DE 19901;

D.  actively advertise broadly in this judicial district via the Internet at https://www.att.com, https://www.myzenkey.com, and https://www.youtube.com;[1]

E.  actively advertise and provide technical support to customers in the individual AT&T Delaware store locations, promoting the password authentication benefits of

---

[1]  *E.g.*,  https://forums.att.com/conversations/network-coverage/what-is-zenkey-a-new-way-to-securely-sign-in-to-apps-websites/5f6392a1bd25500ef6dcf00b; https://web.archive.org/web/20200903121009/https://myzenkey.com/; and https://www.youtube.com/watch?v=ZkFSRDTVM7M.

downloading and using the ZenKey application, which included Averon's misappropriated trade secrets;

F.  employ residents from this judicial district;

G.  continue to conduct such business in Delaware through the continued operations within this judicial district.

7.  Accordingly, this Court's personal jurisdiction over the Defendants comports with Delaware's long-arm statute and the constitutional standards of fair play and substantial justice and arises directly from the Defendants' purposeful minimum contacts with the State of Delaware.

## VENUE

8.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because each defendant is incorporated in and therefore resides in Delaware, and additionally for the reasons set forth in Paragraph 6.

## FACTUAL BACKGROUND

**Averon Developed a Novel Mobile Authentication Technology That Solved
Problems with Multiple Factor Authentication Solutions**

9.  Averon is a technology start-up company that developed a novel API and web-based software solution for the mobile authentication of a user. Averon's proprietary software technology leveraged established encryption technology available on mobile devices to validate a user's phone number and SIM card, and in some instances a user's location. Averon's technology employed a mobile cellular network to perform such validation before allowing the user access to third-party websites. This eliminated the need for entering passwords or the need for sending separate authentication texts to the user's mobile phone, otherwise known as two-factor authentication.

10. Averon's proprietary software technology substantially improved upon traditional two-factor authentication via text message. The cost of traditional two-factor authentication via text message is approximately $0.09 per authentication.[2]

11. The multifactor authentication market as a whole was valued at $8.21 billion in 2018 and is projected to reach $27.69 billion by 2026, growing at a compound annual growth rate of 16.32% from 2019 to 2026.[3]

12. Averon solved a significant problem with passwordless authentication solutions. Averon built a 2FA (2nd Factor Authentication) solution that used the cell phone carriers' cellular-based signaling. Averon's solution worked regardless of whether users' mobile phone devices, including iPhones, were connected over Wi-Fi, which is a local area network protocol that allows access to the internet that is separate from cellular networks. Many iPhones switch over to Wi-Fi when it is available (either manually or automatically) and do not rely on mobile cellular networks when connected over Wi-Fi. Therefore, without Averon's solution, many iPhones could not be authenticated by the cell phone carriers' cellular-based signaling when the mobile device user was connected to Wi-Fi (the "Wi-Fi Issue").

13. Beginning in late 2017, Averon recognized that the ubiquity of this Wi-Fi Issue could be a significant impediment to mass adoption by customers of Averon's passwordless authentication solutions. This is because the passwordless authentication protocol would work when an iPhone user was connected to the cellular network, but would not work when

---

[2] *See* Twilio's stated cost, on their website, using Twilio's AUTHY service for OTP (one time password SMS/Voice). https://www.twilio.com/authy/pricing
[3]     https://www.verifiedmarketresearch.com/product/global-multifactor-authentication-market-size-and-forecast-to-2025/

an iPhone user was connected to the Wi-Fi network, causing customer frustration and potentially hindering the adoption and widespread use of Averon's product.

14.    Averon developed a proprietary method for ensuring the cellular-based mobile phone verification works even when an iPhone user's device is connected to Wi-Fi. Averon included this method in its proprietary software technology, thus solving the Wi-Fi Issue.

15.    Averon determined the best course of action was to protect the proprietary software technology that solved the Wi-Fi Issue as trade secrets. This iPhone method has never been publicly disclosed by Averon and was not previously known by Defendants. This method ensured iPhone users could always be authenticated, whether on a cellular-based or Wi-Fi-based network, and this authentication was seamless for iPhone users.

16.    Averon's leadership team included many accomplished executives with a long history of successful technology ventures and substantial backgrounds in software development, an area in which AT&T and other wireless providers were lacking.

   A.  Chief Executive Officer Wendell Brown is an accomplished entrepreneur and inventor (with well over 50 United States Patents) who previously co-founded online voicemail platform eVoice in 2000 (acquired by AOL), contact center platform LiveOps in 2002, and global VoIP platform Teleo in 2006 (acquired by Microsoft). Mr. Brown was recognized as one of the Top 100 leading computer industry executives in America by technology magazine MicroTimes.[4]

   B.  Former Chief Technology Officer Mark Herschberg worked for Fortune 500 and startup companies in the areas of cybersecurity, big data, and video on demand. He also has many issued or pending patent applications. Mr. Herschberg helped create

---

[4] https://en.wikipedia.org/wiki/Wendell_Brown

a new teaching method at the Harvard Business School, involving a "dynamic case method" that used a virtual environment for students to apply what they learned in class.  He is also an instructor for the Massachusetts Institute of Technology's Undergraduate Practice Opportunities Program accelerator program. Mr. Herschberg holds both a bachelor's degree and a master's degree in electrical engineering and computer science from the Massachusetts Institute of Technology.

C. Former Chief Data Scientist Mark Klein is a Silicon Valley veteran and co-founder of numerous successful startups, including some he created with other Averon executives. His deep experiences in technology include roles as Director of Mobility Solutions and the founding CTO of a variety of startups that were acquired by companies including AOL, Avaya, Intel, and Arbitron. Mr. Klein holds a master's degree in electrical engineering from Stanford University.

17.    Averon attracted many highly sophisticated and well-known investors, including the Salesforce Co-Founder & CEO, the former Cisco Chairman & CEO, and the Family Office of a former IBM CEO.

18.    Averon developed and securely maintained its proprietary software technology at its headquarters in San Francisco, California, where many of its employees and key technical personnel worked. Some technical personnel also worked in New York City. Averon adhered to security requirements that were at a minimum consistent in all material respects with applicable industry standards, as set forth in its "Averon Data Security Standards" document, included as **Exhibit A** to this Complaint.

19.    Averon Data Security Standards included, *inter alia*, the following:

Averon maintains an information security program that at a minimum includes the following:

…

(b) Averon maintains written data security policies and standards that address all data security requirements that at minimum consistent in all material respects with the applicable Industry Standards; and that support the confidentiality, integrity and availability of data systems, information and business operations and the confidentiality, integrity and availability of Consumer Data and Confidential Information. In addition, such policies and standards conform to all applicable data protection laws and regulations.

…

(f) Averon's Data Security Program includes periodic education and awareness messages to Data Recipient Staff that consist of relevant and timely information to sensitize such staff to the importance of security for Consumer Data and Confidential Information, complying with applicable use requirements and limitations, the proper use of Averon's security systems, and the requirements of Averon's information security program.

…

Exhibit A, 3-4.

20.    Averon also entered into non-disclosure agreements (NDAs) before sharing details about its proprietary software technology with any third party, especially trade secret information. Even with an NDA in place, trade secrets were only disclosed on a need-to-know basis. Further, all trade secret files were password protected and required two-factor authentication.

**Averon Sought Out and Collaborated with AT&T to Advance Averon's Authentication Technology**

21.    Averon and its predecessor, Cloudwear, Inc., ████████████████████████████ ████████████████████████████████████

22.    Averon's predecessor, Cloudwear, Inc., and ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████.

23.    ████████████████████████████████████████████████████████ ████████████████████████████. Cloudwear changed its name to Averon in 2017.

Averon is the successor of Cloudwear, Inc.'s interests and obligations ████████████

███████████████████

24.  ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████. The purpose of the █████████████████ was to ensure that

Cloudwear's interests and obligations ██████████████████ would extend

to Averon. ████████████████████████████████████

███████████████████

25.  ██████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
████████████████

26.  ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████

27.  ██████████████████████████████████████████████████████

████████████████████

28.  ██████████████████████████████████████████████████████

████████████ ███ ████████ █ █ ██████ ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████

29. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████n.

30. ████████████████████████████████████████

████████████████████████

31. To provide Averon's seamless authentication technology to users, AT&T's role was to supply the customer verification signaling to Averon. Averon's role was to design and implement a 2FA (2nd Factor Authentication) solution that used cellular-based signaling, to design and implement the signaling and software control stack, to design and build a customer-facing API (Application Programming Interface) / SDK (Software Development Kit) interface for customers to interface with, and to design a solution that would work regardless of whether an iPhone user was interacting with Averon's solution in a cellular or Wi-Fi environment (the Wi-Fi Issue).

32. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

33. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



34.     ███████████████████████████████████████████ Averon asked Mr. Wilson of AT&T for introductions to Verizon and T-Mobile to give Averon the opportunity to share its solution.

35.     Mr. Wilson provided Averon with the names of individuals at both Verizon and T-Mobile whom he thought would be interested in Averon's solution.

36.     Averon subsequently contacted the Verizon and T-Mobile individuals identified by Mr. Wilson.

37.     ████████████████████████████████████████████
████████████████

38.     Mr. Brown (CEO) and Mr. Herschberg (CTO) of Averon met with Verizon in person in July 2018 at Verizon's operational headquarters in New Jersey. ████████████████
████████████████████████████████████████████
████████████████

39.     ████████████████████████████████████████████
████████████████████████

40.     Mr. Brown also informed T-Mobile via email that Averon h██████████████
████████████████ based on Averon's proprietary technology. In that same email, Mr. Brown informed T-Mobile that Averon's proprietary technology eliminated the need for

passwords. The parties' relationship did not advance beyond this point while T-Mobile was in merger discussions with Sprint.

41.   AT&T knew about Averon's efforts to use its (Averon's) proprietary technology and relationship with AT&T to culminate business deals with Verizon and T-Mobile.

42.   Averon reasonably expected to reach business deals with Verizon and T-Mobile, which would involve the use of Averon's proprietary technology.

43.   

44.   In or about November 2018, Mr. Brown met Randall L. Stephenson (CEO of AT&T) at the Wall Street Journal D. Live Conference in Laguna Beach, CA, a conference for CEOs, entrepreneurs, and industry experts to discuss the state of current technologies. Mr. Stephenson and Mr. Brown discussed ████████████████████ and the essence of Averon's technology.

45.   Mr. Stephenson displayed interest in Averon's solution (i.e., Averon's "zero loginID/zero password"). During these discussions, Mr. Brown told Mr. Stephenson that Averon was already in contact with DirecTV (then owned by AT&T). Mr. Stephenson agreed that DirecTV would be a good customer for Averon's "zero loginID/zero password" solution. Mr. Stephenson also offered to pass Mr. Brown's business card to John M. Donovan, Chief Executive Officer of AT&T Communications LLC.

46.     During AT&T's nearly four-year relationship with Averon and its predecessor Cloudwear, companies much larger than Averon offered alternative passwordless authentication solutions. However, despite the availability of these other solutions, AT&T chose to pursue its relationship with Averon and utilize Averon's technology.

47.     As set forth in Paragraph 70 below, after █████████████████████████ █████, DirecTV became a customer of ZenKey.

48.     ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████

49.     ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████

50.     ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██ ██████ ████ ████ ██████ ██████ ██████ ██ ██
███████████████████████████████████████████████████████████
████████████████████████████

51.     ███████████████████████ Averon was negotiating sales agreements with potential

customers, including, for example, ████████████████████████████████████

████████. Further, with respect to ████████ Averon was finalizing a redlined version of the

sales agreement. These imminent sales agreements relied on a continuing ███████████

████████████████

52.     ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████

53.     Averon projected its 2020 sales would have been ███████████, with ███████████ in net

income per year to Averon. █████████████████████████████████████████████

██████████████████

54.     As of February 28, 2018, Averon's Common Stock was valued at ███████████ by an

independent and qualified financial consultant through Economics Partners LLC to comply

with an Employee Stock Ownership Plan requirement. Including Averon's Preferred Shares

priced in a financing round at the time, Averon's combined Common and Preferred Shares

were valued at ████████████. The investors in the Preferred Round were highly

sophisticated and included venture capitalists with substantial experience in the technology

sector.

55.     ██████████████████████████████████████████████████████████

███████████ with Averon without reason or warning on February 1, 2019, with sub-minimal

(60-day) notice in a letter signed by Mr. Hill. This letter is included as **Exhibit H.**

56.     ██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████



57.    Unknown to Averon at the time ███████████████████████████ ████████████████████ AT&T had already formed ZenKey as a joint venture with Verizon and T-Mobile for the purpose of providing passwordless authentication services to ZenKey.

58.    Upon information and belief, ZenKey ████████████████████████ who would utilize AT&T's Service or Service Components for cellular signaling, █ ████████████████████

59.    ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████

60.    ███████████████████████████████████████████████████████████ ████████████

61.    Again, unknown and undisclosed to Averon at the time ████████████████ AT&T had already formed ZenKey LLC in September 2018.

62.    Upon information and belief, AT&T intentionally and willfully withheld disclosing to Mr. Brown and Averon its formation of ZenKey LLC and ZenKey's purpose to offer passwordless authentication services.

15

**Simultaneous with AT&T's Collaboration with Averon, AT&T Formed a Competitor, ZenKey, in a Joint Venture Partnership with the Other Major Wireless Providers**

63.     In or about September 2018, ████████████████████████████████████

████████████████████████████████████████████████████ AT&T formed

ZenKey as a joint venture with Verizon and T-Mobile. These companies acting in concert

held a combined (approximately) 98% market share of the wireless subscriber market in

the United States in 2020.[5]

64.     Upon information and belief, ZenKey planned to offer an identity-verification solution that

used mobile cell network SIM-signaling for authentication, just like Averon.

65.     Upon information and belief, the collaboration between AT&T, Verizon, and T-Mobile,

traditionally competitors of each other, to use and offer Averon's proprietary technology

through ZenKey, demonstrates the importance and novelty of the technology.

66.     Upon information and belief, AT&T knew, or should have known, that including both

Verizon and T-Mobile in the ZenKey joint venture would prevent Averon or any other

company from offering the SIM-signaling authentication solution.

67.     Upon information and belief, AT&T knew, or should have known, that offering the ZenKey

application would directly impact the viability of Averon's business model and would lead

to the demise of Averon.

68.     ZenKey hired Mr. Hill, formerly AT&T's Vice President of Product Marketing

Management, as its Chief Commercial Officer. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████

---

[5]     https://www.lightreading.com/4g3gwifi/us-wireless-snapshot-subscribers-market-share-and-q3-estimates/d/d-id/764688

69.     Below is a screengrab of Mr. Hill in a video conference on June 24, 2021, describing
ZenKey's product, the history of the collaboration of the three carriers, and AT&T's efforts
setting up ZenKey LLC as a joint venture to capitalize on that collaboration.



https://www.youtube.com/watch?v=Sd3lrQ4AImc @ 35:22-44:57.

70.     The ZenKey app officially launched on September 17, 2020. Upon information and belief,
ZenKey formed partnerships with some of Averon's prospective customers, including, for
example, ████████████████████████████████████████████████

71.     Averon obtained a strong basis that AT&T misappropriated and used its trade secrets for
ZenKey in the late summer of 2021.

72.     ZenKey frequently described its technology as novel and innovative.

73.     In a press release, ZenKey described its technology as a "unique, network-based identity solution that relies on data derived from wireless carriers to verify users." This press release is included as **Exhibit I** to the Complaint.

74.     In an article published on LinkedIn, AT&T's Chief Brand Officer at the time, Ms. Fiona Carter, described ZenKey as "next-gen innovation at its finest." This article is included as **Exhibit J** to the Complaint.

75.     In another article, ForgeRock, who was identified as a launch partner of ZenKey, described ZenKey as "a new solution that leverages the network and SIM card details to deliver authentication and identity verification features to web and mobile applications." This article is included as **Exhibit K** to the Complaint.

76.     Upon information and belief, Defendants made the representations to the public and industry having knowledge of Averon's trade secrets and other confidential information and knowledge that Averon was the innovator and owner of the novel technology.

77.     In another screengrab of Mr. Hill in the video conference on June 24, 2021, the ZenKey graphic beside Mr. Hill states that ZenKey's is using "the unique fraud preventions services of the wireless network," and that the ZenKey "solution is the only one of its kind in the U.S. market."



https://www.youtube.com/watch?v=Sd3lrQ4AImc @ 35:34.

78.   ███████████████████████████ Averon explained to AT&T that for the new technology to be accepted by users, the authentication had to be seamless to the user, and the key to making it easy to use was by not requiring the user to download a separate application to access the authentication method.

79.   Upon information and belief, ZenKey required its users to download a separate application, which made using the technology cumbersome and difficult. This requirement was contrary to the procedure Averon espoused ████████████████████ and, upon information and belief, had a negative impact on the commercial performance of ZenKey.

80.   Upon information and belief, ZenKey is no longer being offered by AT&T, Verizon, or T-Mobile.

81.   Upon information and belief, there have been no public announcements about why these carriers are no longer offering ZenKey.

82.     By usurping Averon's trade secrets and forming a joint venture with the next two largest wireless providers (the same providers that Averon expected to be its customers), and by ███████████████████████████████████████, Defendants foreclosed all opportunities for Averon to offer its technology. Defendants monopolized the critical technology and the underlying data needed for that technology, thereby destroying the value of Averon's business.

## COUNT I

### Trade Secret Misappropriation (DTSA - 18 U.S.C. § 1836 *et seq.*)
### (Against AT&T and ZenKey)

83.     Averon incorporates paragraphs 4-82 of this Complaint as though fully set forth here.

84.     Averon is the owner of trade secrets under the Defend Trade Secrets Act (DTSA) in its proprietary software technology. These trade secrets ensure that cellular network-based mobile authentication of mobile phone users works even when a user's iPhone device is connected to Wi-Fi, a local area network protocol that allows access to the internet separate from cellular networks. Averon took reasonable measures to keep this information secret by adhering to its Data Security Standards and using non-disclosure agreements before sharing confidential information with third parties. Even with an NDA in place, trade secrets were only disclosed on a need-to-know basis. Further, all of Averon's trade secret files were password protected and required two-factor authentication. These trade secrets also derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

85.     Averon's trade secrets relate to Averon's mobile authentication software and its related services that were used in, and were intended for use in, interstate and foreign commerce.

86.    Upon information and belief, AT&T misappropriated Averon's trade secrets when it knowingly disclosed the trade secrets to ZenKey for its own economic benefit and ZenKey's economic benefit without authorization.

87.    Upon information and belief, ZenKey misappropriated Averon's trade secrets when it knowingly received and possessed Averon's trade secret for its own economic benefit without authorization.

88.    Averon has validated that ZenKey is using Averon's trade secrets. Upon information and belief, without Averon's trade secret solution, ZenKey's solution would not work when an iPhone device is connected through Wi-Fi.

89.    Upon information and belief, the Defendants' acts of trade secret misappropriation were intentional, willful, and malicious, and performed with knowledge that the misappropriated secrets belonged to Averon and not the Defendants and that the misappropriation would harm Averon.

90.    The Defendants' misappropriation caused Averon harm. By usurping Averon's trade secrets and forming a joint venture with the next two largest wireless providers (the same providers that Averon expected to be its customers), Defendants foreclosed all opportunities for Averon to offer its technology. Defendants monopolized the critical technology and the underlying data needed for that technology, thereby destroying the value of Averon's business.

## COUNT II

**Trade Secret Misappropriation (CUTSA – Cal. Civ. Code § 3426 *et seq.*)**
**(Against AT&T and ZenKey)**

91.    Averon incorporates paragraphs 4-82 of this Complaint as though fully set forth here.

92.     Averon is the owner of trade secrets under the California Uniform Trade Secrets Act
        (CUTSA) in its proprietary software technology. These trade secrets ensure that cellular
        network-based mobile authentication of a mobile phone user works even when a user's
        iPhone device is connected to Wi-Fi, which is a local area network protocol that allows
        access to the internet separate from cellular networks. Averon took reasonable measures to
        keep this information secret by adhering to its Data Security Standards and using non-
        disclosure agreements before sharing confidential information with third parties. Even with
        an NDA in place, trade secrets were only disclosed on a need-to-know basis. Further, all of
        Averon's trade secret files were password protected and required two-factor authentication.
        These trade secrets also derive independent economic value, actual or potential, from not
        being generally known to the public or to other persons who can obtain economic value
        from its disclosure or use.

93.     Upon information and belief, AT&T misappropriated Averon's trade secrets when it
        disclosed the trade secrets to ZenKey without authorization.

94.     ███████████████████████████████████████████████████████████
        ███████████████████████████████████████████████████████████
        ███████████████████████████████████████████████████████████
        ██████████████████████████████████████████

95.     Upon information and belief, ZenKey misappropriated Averon's trade secrets when it
        acquired the trade secrets from AT&T and then used the trade secrets in its product without
        authorization. Mr. Hill, who was ZenKey's Chief Commercial Officer and formerly the
        Assistant Vice President of Product Marketing Management at AT&T, ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

96.     Upon information and belief, Averon's trade secrets were essential to the operation of the ZenKey application. Without Averon's trade secret solution, ZenKey's application would not work when an iPhone device is connected through Wi-Fi.

97.     Defendants' misappropriation caused Averon harm. By usurping Averon's trade secrets and forming a joint venture with the next two largest wireless providers (the same providers that Averon expected to be its customers), Defendants foreclosed all opportunities for Averon to offer its technology. Defendants monopolized the critical technology and the underlying data needed for that technology, thereby destroying the value of Averon's business.

## COUNT III

### Fraud and Misrepresentation
### (Against AT&T)

98.     Averon incorporates paragraphs 4-82 of this Complaint as though fully set forth here.

99.     ████████████████████████████████████████████████

100.    ███████████████████████████████████████████████████

        ████████████████████████████

101.    Averon performed its obligations ████████████████████████

102.    Averon performed its obligations ██████████████████

103.    ███████████████████████████████████████████████████

        ███████████████████████████████████████████████████

        ████████████████████████

104. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

105. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████.

106. Upon information and belief, ██████████████, AT&T concealed from Mr. Brown and Averon that:

(i) AT&T had formed ZenKey;

(ii) ZenKey's purpose was to offer cellular-based authentication signaling;

(iii) ZenKey was a direct competitor to Averon;

(iv) AT&T formed and operated ZenKey as a joint venture with Verizon and T-Mobile, two wireless carriers that AT&T had introduced to Averon as prospective partners or customers for Averon, ████████████████████████████████

████████████████████████;

(v) AT&T and/or ZenKey, via its joint venture relationship with AT&T, were in the process of contacting (or had contacted) prospective Averon customers that were disclosed to AT&T ████████████████████████████████████

████████████████████; and

(vi) AT&T used Averon's confidential information, including its Wi-Fi solution trade secrets, to develop ZenKey.

107.   Upon information and belief, ████████████████████████████████ and AT&T's other concealments and omissions, were false because AT&T had already formed ZenKey to provide cellular-based authentication services in concert with Verizon and T-Mobile.

108.   Upon information and belief, AT&T's misrepresentations, concealments and omissions were intentional and material, as ████████████████████████████ ██████t would directly impact the viability of Averon's business model, lead to the loss of Averon's potential sales contracts, lead to the loss of Averon's investor base, and ultimately lead to the demise of Averon.

109.   AT&T and Averon had a ████████████████████████████ and Averon had no reason to doubt or question AT&T's representations ████████████ ██████ at the time they were made. Averon only learned of AT&T's misrepresentations, concealments, and omissions later on.

110.   Averon reasonably and justifiably relied on AT&T's misrepresentations, concealments and omissions when, ██████████████████████████ Averon and its leadership team discussed the future of Averon internally, including attempting to adapt Averon's technology in a new way ███████████████████████████ ██████████████████████████████. 

111.   AT&T's misrepresentations, concealments and omissions caused Averon harm. Averon was led to believe ████████████████████████████████,

which led to the demise of Averon because ██████████████████████████

██████████████████████████

112.  The lack of access to ████████████ directly impacted the viability of Averon's

business model, led to the loss of Averon's potential sales contracts, led to the loss of

Averon's employees and investor base, and ultimately led to the demise of Averon.

## COUNT IV

### Breach of Contract - ████████████████████
### (Against AT&T)

113.  Averon incorporates paragraphs 4-82 of this Complaint as though fully set forth here.

114.  ████████████████████████████████████████████

115.  Averon performed its obligations ████████████████████████

116.  Averon's trade secrets constitute novel, confidential software technology.

117.  ████████████████████████████████████████████

██████████

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████████████

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████



118.	Upon information and belief, █████████████████████████

█████████████████████████████████ disclosed Averon's trade

secrets to ZenKey without authorization.

119.	In disclosing Averon's trade secrets to ZenKey, ████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████

120.	Upon information and belief, ███████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████

121.	AT&T's breaches caused Averon harm.  By disclosing Averon's trade secrets to ZenKey in

███████████████ and using those trade secrets in a joint venture with the next two largest

wireless providers (the same providers that Averon expected to be its customers), AT&T

foreclosed all opportunities for Averon to offer its technology. AT&T's breaches

monopolized the critical technology and the underlying data needed for that technology,

thereby destroying the value of Averon's business.

## COUNT V

### Breach of Contract - ██████████████████
### (Against AT&T)

122.    Averon incorporates paragraphs 4-82 of this Complaint as though fully set forth here.

123.    ████████████████████████████████████████████████████████

124.    Averon performed its obligations █████████████████████████

125.    Averon's trade secrets constitute novel, confidential software technology.

126.    Upon information and belief, ████████████████████████████████████

███████████████████████████ when it disclosed Averon's trade secrets to ZenKey

without authorization.

127.    ████████████████████████████████████████████████████████

████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

128.    AT&T's breach caused Averon harm.  By disclosing Averon's trade secrets to ZenKey in

████████████████ and using those trade secrets in a joint venture with the next two largest

wireless providers (the same providers that Averon expected to be its customers), AT&T

foreclosed all opportunities for Averon to offer its technology. AT&T's breach monopolized

the critical technology and the underlying data needed for that technology, thereby

destroying the value of Averon's business.

## COUNT VI

### Unfair Competition – Deceptive Advertising
### (Against AT&T and ZenKey)

129.    Averon incorporates paragraphs 4-82 of this Complaint as though fully set forth here.

130.    Defendants engaged in unfair competition by using deceptive, untrue, and misleading advertising, claiming ZenKey's technology was novel and innovative.

131.    In a press release, ZenKey described its technology as a "unique, network-based identity solution that relies on data derived from wireless carriers to verify users." **Exhibit I.**

132.    In an article published on LinkedIn, AT&T's Chief Brand Officer at the time, Ms. Fiona Carter, described ZenKey as "next-gen innovation at its finest." **Exhibit J.**

133.    In another article, ForgeRock, who was identified as a launch partner of ZenKey, described ZenKey as "a new solution that leverages the network and SIM card details to deliver authentication and identity verification features to web and mobile applications." **Exhibit K.**

134.    In a video conference on June 24, 2021, narrated by Mr. Hill of Zenkey (formerly of AT&T), the ZenKey graphic beside Mr. Hill stated that ZenKey's is using "the unique fraud preventions services of the wireless network," and that the ZenKey "solution is the only one of its kind in the U.S. market." *See* video at Paragraph 77, which is incorporated herein.

135.    Upon information and belief, Defendants made or caused these representations to be made to the public and industry, having knowledge of Averon's trade secrets and other confidential information and knowledge that Averon was the innovator and owner of the novel technology.

136.    Averon lost money as a result of Defendants' unfair, deceptive, untrue, and misleading advertising.

## <u>COUNT VII</u>

### Unfair Competition – Unfair and Unlawful Business Practices
### (Against AT&T and ZenKey)

137.    Averon incorporates paragraphs 4-82 of this Complaint as though fully set forth here.

138.   Upon information and belief, AT&T and ZenKey engaged in unfair business practices after ███████████████████████████████████████████ Specifically, AT&T, in a joint venture with Verizon and T-Mobile that accounted for approximately 98% of the wireless subscriber market, developed and implemented ZenKey using Averon's proprietary software technology and effectively locked Averon out of the marketplace.

139.   Upon information and belief, AT&T and ZenKey also engaged in unlawful business practices. For example, those practices constitute trade secret misappropriation, breach of contract, and intentional interference with prospective economic relationships, as alleged herein and incorporated herein by reference.

140.   Averon lost money as a result of AT&T and ZenKey's unfair and unlawful business practices.

### <u>COUNT VIII</u>

**Intentional Interference with Prospective Economic Relations – Potential Customers of Averon**
**(Against AT&T and ZenKey)**

141.   Averon incorporates paragraphs 4-82 of this Complaint as though fully set forth here.

142.   Averon and its potential customers, including ███████████████████████, ██████████████ were in economic relationships that Averon estimated would have earned ██████████ in sales in 2020, with ██████████ in net income per year to Averon.

143.   These economic relationships were highly likely to have led to economic benefits for Averon. Upon information and belief, ZenKey formed partnerships with some of Averon's prospective customers, including, for example, ████████████████████████ ████████████████

144.   Averon reasonably expected these business deals to result in economic benefits, based on meetings and contacts with these customers and the identified need for Averon's solution in the marketplace.

145.   Upon information and belief, AT&T knew, or should have known, of Averon's economic relationships with the potential customers.  For example, AT&T had a role in initiating contact with at least some of these customers. ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████

146.   Responding to written requests from AT&T on multiple occasions, Averon shared its customer lists with AT&T ████████████████████ described above in Paragraphs 33, 51 and 52.

147.   Upon information and belief, AT&T and/or ZenKey, via its joint venture relationship with AT&T, contacted some of Averon's prospective customers for the purpose of using ZenKey's solution, with full knowledge that Averon had sought business deals with these companies and that ZenKey would supplant Averon.

148.   Upon information and belief, AT&T owed a duty of care to Averon, ███████████ ████████████

149.   Additionally, upon information and belief, ████████████████████ ████████████████████ AT&T had a role in initiating contact with at least some of these customers, ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

150.   Upon information and belief, █████████████████████████████ ███████████████████████████████ their actions would interfere with Averon's economic relationships and cause Averon to lose the probable future economic benefits of those relationships. For example, Defendants misappropriated Plaintiff's trade secrets, ████████████████████████████████ and engaged in unfair competition by using deceptive, untrue, and misleading advertising. By engaging in this conduct, all of which is independently wrongful, Defendants intended to disrupt the relationships or at least knew that disruption of the relationships was certain or substantially certain to occur.

151.   Upon information and belief, Defendants disrupted and interfered with Averon's economic relationships. Averon lost the potential sales contracts with ████████████████████ ██████████████████████████████████████████████ and disclosed its trade secrets to ZenKey, and after ZenKey proceeded to use Averon's trade secrets in its own product.

152.   Defendants' conduct caused Averon to lose out on the approximately ████████████ in sales in 2020, with ████████████ in net income per year to Averon, which Averon reasonably expected to earn.

### COUNT IX

**Intentional Interference with Prospective Economic Relations – Potential Agreement with Verizon
(Against AT&T)**

153.   Averon incorporates paragraphs 4-82 of this Complaint as though fully set forth here.

154.   Averon and its potential customer Verizon were beginning an economic relationship that could have resulted in a cellular-based signaling agreement with Verizon.

155. ████████████████████████████████████T, Averon asked Mr. John Wilson of AT&T for introductions to Verizon to give Averon the opportunity to share its authentication solution with Verizon.

156. Mr. Wilson provided Averon with the name of an individual at Verizon whom he thought would be interested in Averon's solution.

157. Averon subsequently contacted the Verizon individual identified by Mr. Wilson.

158. ████████████████████████████████████████████████████ ████████████████████

159. Mr. Brown (CEO) and Mr. Herschberg (CTO) of Averon met with Verizon in person in July 2018 at Verizon's operational headquarters in New Jersey. ████████████ █████████████████████████████████████████████████████ █████████████████

160. █████████████████████████████████████████████████████ █████████████████████

161. AT&T knew about Averon's efforts to use its proprietary technology ██████████ ██████████████ to culminate a business deal with Verizon because it was AT&T that provided the introduction to Verizon.

162. Averon reasonably expected to reach a business deal with Verizon, which would involve the use of Averon's proprietary technology.

163. This economic relationship was highly likely to have led to economic benefits for Averon. Averon reasonably expected to reach a business deal with Verizon because Verizon would have provided ████████████████████████ and Verizon would have received the same benefits as AT&T, namely significant monetary compensation from Averon.

164.   Upon information and belief, AT&T knew, or should have known, of Averon's potential economic relationship with Verizon since AT&T (Mr. Wilson) had a role in initiating contact with Verizon.

165.   Upon information and belief, ███████████████████████████████████████ ███████████████████

166.   Additionally, upon information and belief, ████████████████████████████ █████████████████████████ AT&T had a role in initiating contact with Verizon, and Mr. Wilson of AT&T knew of the Averon-Verizon relationship. ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████

167.   Upon information and belief, ███████████████████████████████████████ █████████████████████████ heir actions would interfere with Averon's economic relationship and cause Averon to lose the probable future economic benefits of the relationship with Verizon. By engaging in this conduct, AT&T intended to disrupt the relationship or at least knew that disruption of the relationship was certain or substantially certain to occur.

168.   Upon information and belief, AT&T disrupted and interfered with Averon's economic relationship with Verizon. Averon lost a potential signaling contract with Verizon ████ ███████████████████████████████████

169.   AT&T's conduct caused Averon harm, as Averon lost out on the market share of cellular signaling customers from Verizon, which Averon reasonably expected to earn.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to enter judgment against Defendants and their respective subsidiaries, affiliates, agents, servants, employees, and all persons in active concert or participation with them, granting the following relief:

A. Declaratory relief, stating and confirming that Plaintiff's trade secrets, misappropriated by Defendants, are the exclusive property of Plaintiff and that neither Defendants nor any third parties are entitled to use these trade secrets without Plaintiff's authorization;

B. Permanent injunctive relief, and/or an order of specific performance, restraining and enjoining Defendants and any third parties associated with Defendants from accessing or using Plaintiff's trade secrets for any commercial purpose;

C. Compensatory, special, incidental and consequential damages;

D. Restitution;

E. Exemplary and punitive damages to the extent permitted by law;

F. Recovery of the unjust enrichment obtained by Defendants as a result of their wrongful conduct;

G. An award of pre-judgment interest, cost of suit, and reasonable attorneys' fees to the extent permitted by operation of law;

H. An order requiring the destruction of all documents and things that discuss, reference, mention, or use the misappropriated trade secrets; and

I. Such other and further relief as this Court or a jury may deem proper and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 11, 2022      Respectfully submitted,

            **AVERON US, INC.**

            /s/ Tracy L. Pearson
            Tracy L. Pearson (DE Bar #5652)
            **DUNLAP BENNETT & LUDWIG PLLC**
            1509 Gilpin Avenue, Ste.2
            Wilmington, DE 19806
            Tel: (302) 273-4249
            Fax: (855) 223-8791
            tpearson@dbllawyers.com

            Joseph Diamante (*pro hac vice* forthcoming)
            **DUNLAP BENNETT & LUDWIG PLLC**
            1250 Broadway, 36th Fl.
            New York, NY 10001
            Tel.: (703) 777-7319
            Fax: (855) 226-8791
            jdiamante@dbllawyers.com

            Raymond Jones (*pro hac vice* forthcoming)
            **DUNLAP BENNETT & LUDWIG PLLC**
            211 Church St. SE
            Leesburg, VA 20175
            Tel: (703) 777-7319
            Fax: (855) 226-8791
            rjones@dbllawyers.com

            *Attorneys for Plaintiff*